IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

CORD CHRISTENSON,              )
                              )     No. 4:05-cv-571-HDV-RAW
          Petitioner,         )
                              )
vs.                           )
                              )     REPORT AND RECOMMENDATION
JERRY BURT, Warden,           )     ON PETITION FOR WRIT
                              )     OF HABEAS CORPUS
          Respondent.         )

Petitioner Cord Christenson, an inmate currently at the Anamosa State Penitentiary (ASP) in Anamosa, Iowa, contends he is in custody in violation of the Constitution of the United States. He petitions for a Writ of Habeas Corpus. 28 U.S.C. § 2254. The case has been referred to me for further proceedings and a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

On August 28, 1998, a jury found Christenson guilty of first-degree kidnapping, first-degree burglary, and second degree sexual abuse in violation, respectively, of Iowa Code §§ 710.1, .2; 713.1, .3; 709.1, .3 (1997), in connection with the alleged rape and abduction of Rebecca Lyons on February 4, 1998, in Des Moines, Polk County, Iowa. On October 28, 1998 Christenson was sentenced to life in prison on the kidnapping charge,[1] and to a period not to exceed twenty-five years on the burglary and sexual abuse charges, the sentences to run concurrently. State v. Christenson, No. FE 122256 (Iowa Dist. Ct. Polk County). On direct appeal, the

---

[1] Kidnapping in the first degree is a class A felony for which a life sentence is mandatory. Iowa Code §§ 710.2, 902.1.

convictions for first-degree kidnapping and first-degree burglary were affirmed. The conviction for second-degree sexual abuse was vacated.[2] State v. Christenson, 2000 WL 372775, *2 (Iowa App. Apr. 12, 2000). Application for further review by the Iowa Supreme Court was denied on August 3, 2000. (PCR App. at 329). On August 1, 2001 Christensen filed a pro se application for post-conviction relief (PCR) in state court. Counsel was appointed, evidentiary hearing was held, and on June 14, 2004 the state district court denied his application. Christenson v. State,[3] No. PCCE 42484 (Iowa Dist. Ct. Polk County). The Iowa Court of Appeals affirmed the PCR court's ruling on July 13, 2005. Christenson v. State, 705 N.W.2d 107 (Table), 2005 WL 1630101 (Iowa App. 2005). Application for further review was again sought and denied. Christenson filed this timely Petition for Writ of Habeas Corpus on October 19, 2005. Counsel was appointed, briefing and supplemental briefing have been filed by the parties, and the matter is now submitted.

---

[2] The parties and the Iowa Court of Appeals agreed the sexual abuse conviction should have been merged with the kidnapping conviction because the elements of the kidnapping charge necessarily included the elements of second degree sexual abuse. Christenson, 2000 WL 372775, *2 (Iowa App. Apr. 12, 2000).

[3] The state court spelled petitioner's name "Christensen" in the Ruling on Application for Post-Conviction Relief. "Christenson" is the correct spelling.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The evidence at trial, viewed favorably to the verdict, was as follows. In the summer of 1995 Cord Christenson met Rebecca Lyons. (Trial Tr. at 193-95). They dated for a period of time until the fall of 1995 when Lyons ended the relationship. (<u>Id.</u> at 196-97).

In mid-September 1996,[4] in the middle of the night, Lyons awoke from a sleeping position on her stomach to find a man sitting on her back with his arm around her neck in a choke hold. (Trial Tr. at 198). After a brief struggle, she realized the man was Christenson. (<u>Id.</u> at 199). He had cut through a screen in her kitchen window and entered the house. (<u>Id.</u> at 200). Once she knew who it was Lyons attempted to diffuse the situation by trying to calm Christenson down. (<u>Id.</u> at 200-01). After about forty-five minutes of talking with Christenson she was able to call the police. Christenson heard her make the call and left. (<u>Id.</u> at 201-02). He returned about an hour later, pulled his car into Lyons' driveway and attempted to stab himself in the chest with a screwdriver. (<u>Id.</u> at 203, 676). Police officers took Christenson to Broadlawns Hospital for evaluation. He was initially charged with kidnapping and burglary in the first degree, but in January 1997

---

[4] The date is not clear from the trial transcript. (Trial Tr. at 197-98).

pled guilty to a reduced charge of burglary in the second degree. (Id. at 677-80). Christenson received a sentence of probation, a no contact order with respect to Lyons was entered, and he was to continue with mental health treatment. (Id. at 680-81; Direct Appeal App. at 237-39).

On December 18, 1997 Lyons noted Christenson's name on her caller ID three times in a ten-minute time period. She called a friend of hers about the calls. After the friend called Christenson Lyons decided not to contact the police. (Trial Tr. at 207-09).

On the morning of February 4, 1998, Lyons woke up, let her dog outside and got her six-year old son Joey ready for school. Before taking her son to school, she let the dog back into the house in the basement. (Trial Tr. at 211-12). She tried to call her sister but could not get a dial tone on the phone. Lyons then took her son to his elementary school, about a mile away. (Id. at 213).

When Lyons returned to her house, she came in through the front door and crossed to a door in the kitchen which led to the basement. She intended to let her dog out of the basement. (Trial Tr. at 214). As she unlatched the door, she was "rushed and attacked" by someone coming out of the basement, who put her in a headlock and "zapped" her with a stun gun several times around her neck and right hip. (Id. at 214-15, 217-18). Lyons soon realized it was Christenson. (Id. at 215). He took her into the living room

4

where she tried to "talk him down." (Id. at 220). She noticed a plastic "zip tie" on Christenson's wrist. When she asked about the zip tie he cut it off with a knife he had in a sheath. (Id. at 220-22).

Christenson told Lyons there were warrants out for his arrest relating to the no contact order, that he had to leave the country, and that he was going to go to Mexico and take her with him. (Trial Tr. at 223-24). First, however, he wanted to take a shower, which he did, forcibly taking Lyons into the bathroom shower with him. (Id. at 225-26). He then took her into the bedroom saying he wanted to take a nap. Christenson bound Lyons to him by putting a zip tie on her left wrist, another on his right wrist and looping them together with a third tie. (Id. at 227, 233). Lyons testified Christenson then raped her. (Id. at 234-35, 237, 238-39).

Afterward, Christenson took Lyons into the bathroom, cut the ties off with fingernail clippers she gave him, and allowed her to clean up. (Trial Tr. at 244-45). Lyons grabbed her purse as they went back into the bedroom and took a container of mace from it. (Id. at 247). She sprayed it into Christenson's face, enraging him. (Id. at 248-49). Christenson assaulted her and a struggle ensued. (Id. at 249). Ultimately Christenson calmed down. He told Lyons again he was taking her to Mexico and said she was going to drive. (Id. at 254-55). Lyons was directed to pack a bag for her and her son. She left the house with Christenson. (Id. at 257-58).

5

Christenson drove them in Lyons' car to Christenson's storage unit where he picked up some black bags. (Trial Tr. at 260, 263-64). They next drove to a nearby fast food restaurant for something to eat, then stopped at a drug store to buy dog food for Lyons' dog. (Id. at 265-66). Christenson came into the store with Lyons and stayed with her the entire time. (Id. at 267-68). Lyons did not say anything to the clerk about her predicament. (Id. at 268). They returned to Lyons' house with the dog food. (Id. at 269, 273). Lyons was allowed to use the bathroom by herself. She wrote the word "Mexico" inside a bathroom cupboard in an effort to let someone know where to look for her. (Id. at 271-72).

At Christenson's direction, Lyons then drove them to Joey's elementary school. (Trial Tr. at 273-74). With Christenson present, Lyons signed her son out of school about 1:15 p.m., again not telling anyone what was going on. (Id. at 274-77). The three of them then drove to Interstate 35 and headed south. Lyons drove, Christenson was in the front passenger seat, and Joey was in the back seat. (Id. at 278-79).

About an hour outside of Des Moines, they stopped at a gas station/convenience store in a small town to get gas and use the facilities. (Trial Tr. at 280-81). Lyons did not tell the proprietors, an elderly couple, about her situation. (Id. at 281-82). They continued on their journey south, Lyons still driving. When they were an hour or so from Kansas City, Christenson

6

announced he would catch a bus the rest of the way in Kansas City. (Id. at 284-85).

As they drove on Ms. Lyons was stopped by a Missouri state trooper for speeding. (Trial Tr. at 285-86). She signed the ticket prepared by the trooper, again saying nothing. (Id. at 287). She testified she feared for herself and her son and hoped to be released without incident in Kansas City. (Id. at 286-87).

As they drew closer to Kansas City, they stopped at a convenience store to buy a map of the Kansas City area and get directions to the bus station. (Trial Tr. at 288). All three of them went into the store where one of the attendants gave them directions. (Id. at 289). Again Lyons said nothing to raise an alarm. (Id. at 290).

They located the bus station, and Christenson got out with his bags. (Trial Tr. at 291). He left the stun gun in the car with Lyons. Friendly now, he expressed concern for her safety in the area of town where the bus station was located. (Id. at 291-92). Lyons returned to Des Moines without contacting the Kansas City police. (Id. at 294). She took Joey to his father's house, and briefly told the father what had happened. (Id. at 295). Joey's father called Lyons' mother, who arrived and took Lyons to the Des Moines Police Department. (Id. at 296). After giving a statement to the police Ms. Lyons was directed to a local hospital for a physical examination. (Id. at 297, 368, 371). Photographs of Lyons'

7

bruise and scratch injuries to her left wrist, forearms, back of her neck, back, left buttock and right hip were taken at the hospital.

After the examination at Broadlawns, Lyons and her mother met with police identification technicians at Lyons' house until about 3:30 a.m. the next morning. Lyons then went to her mother's house to sleep, returning to her house briefly in the morning to get some clothes. (Trial Tr. at 308). That afternoon, February 5, Lyons met with Officer Mark Schleuger at the police station and gave him a detailed statement about the events of the preceding day. (Id. at 304). She then went back to her house with Officer Schleuger, but on receiving information that Christenson may have purchased a bus ticket to return to Des Moines, got upset and did not enter. (Id. at 310, 312).

Christenson returned by bus to Des Moines and went to work on February 5. (Trial Tr. at 656). Before leaving Kansas City, he mailed a money order in the amount of one hundred dollars to Lyons which she received and turned over to Officer Schleuger. (Id. at 549-50).

Later on February 5 Officer Schleuger located Christenson at his storage unit (or garage). (Trial Tr. at 535-36). Schleuger asked Christenson to accompany him to the police station. (Id. at 537). Christenson was transported to the police station where he was interviewed by Schleuger and another officer. The interview was

8

tape recorded. (Id. at 541, 543; Direct Appeal App. at 218 - 235).
Christenson initially waived his Miranda rights and denied having
contact with Lyons since September 1996. (Direct Appeal App. at
220, 224-32). At one point he told officers they would have to talk
to his lawyer, (id. at 232), then repeated his denials. (Id. at
232-235).

Christenson was arrested and ultimately charged with
kidnapping, burglary and sexual abuse offenses mentioned
previously. (Direct Appeal App. at 1-3). The case came on for jury
trial on August 19, 1998. In proceedings prior to jury selection
counsel, in the presence of Christenson, and the court discussed
the use of prior "bad acts" evidence during trial, specifically the
1996 incident, subsequent charges and burglary conviction. (Trial
Tr. at 38-39). Christenson's counsel, Tim McCarthy, informed the
court he planned to offer evidence concerning the 1996 incident and
the charges resulting from it, indicating it had "significant
relevance" to Christenson's defense. (Id. at 38). He would explain
later that the earlier conviction went along with the defense
theory that Lyons had cried wolf once before and it had turned out
not to be so serious, and was now doing the same thing again. (PCR
Tr. at 82-83).

Christenson's defense was that he was present in Lyons'
home on the evening of February 3, 1998 and the next day by
invitation and the sex was consensual. He testified about how his

9

relationship with Lyons started and ended, the September 1996 incident, the charges brought, conviction on a lesser charge and sentence to probation. (Trial Tr. at 609-615). According to Christenson, on February 3, 1998 Lyons while driving by saw him walking down the street, stopped, initiated conversation, gave him a ride, and invited him to come to her house later that evening. (Id. at 619-21). He accepted the invitation. He said he and Lyons had consensual sex multiple times that evening and the following morning, part of which involved, at Lyons' suggestion, the use of "zip ties" (or "cable ties") he had with him to bind Lyons' wrists together. (Id. at 622-28). Christenson denied knowing how cable ties got in Lyons' basement or cutting her phone line. (Id. at 630-31). He testified he accidentally sprayed mace in his face when Lyons' purse fell off the vanity after she fell against it during sexual activity. (Id. at 657-58). As they were picking up the things that fell out of her purse, he handled the mace cannister and sprayed it while toying with it. (Id. at 658-59).

Christenson testified Lyons suggested he travel with her to Kansas City as she had to pick up some things for a friend. (Trial Tr. at 631). He agreed to go along, planning to return the same day. (Id. at 631-32). Christenson's chronology of events leading up to and during the drive to Kansas City generally tracked Lyons' testimony, although he testified he did not force her to go to Kansas City. (Id. at 633-39).

10

Their stories diverge at the point where they stopped at
the convenience store to get the map and directions to the bus
station. Christenson testified Lyons wanted to go to the bus
station because "apparently there was a landmark where she needed
to . . . go." (Trial Tr. at 640). According to Christenson about
five minutes away from the Kansas City bus station Lyons revealed
her true reason for going to Kansas City. She stopped the car and
told him she had to pick up drugs for her friend. Lyons got out of
the car, opened the trunk, came back, grabbed a thick envelope from
her purse and gave it to a "shady type person" who at this point
had approached the back of the car. (<u>Id.</u> at 643-45). Christenson
said he saw Lyons give the envelope to the person at the back of
the car, and saw another individual put a box in the trunk. (<u>Id.</u> at
646). This, continued Christenson, upset him. He told Lyons' he
could not drive back with her and demanded she take him to the bus
depot. (<u>Id.</u> at 647). He said Lyons asked if she could borrow some
money to pay the traffic ticket and he told her he would have to
buy his bus ticket first and then he would get a money order for
her. He removed the stun gun from one of his bags and gave it to
Lyons for protection because they were not in a good neighborhood.
(<u>Id.</u> at 648).

Christenson purchased a bus ticket to return to Des
Moines. He sent a money order in the amount of $100 and mailed it
to Lyons while he was waiting for the bus. (Trial Tr. at 651, 654-
55).

With respect to his statements to the police, Christenson explained he lied about being with Lyons out of concern for the facts he had violated the terms of his probation by leaving the state and the no contact order by being with Lyons. (Trial Tr. at 664-65). He also felt he had been railroaded the last time and would not be given a "fair shake" by the police. (<u>Id.</u> at 664).

The case went to the jury. The court instructed the jury as follows concerning its consideration of the 1996 incident:

> You have heard evidence that the defendant allegedly committed other acts with Rebecca Lyons before February 4, 1998. If you decide the defendant committed these other acts, you may consider those acts only to determine whether the defendant has a sexual passion or desire for Rebecca Lyons.

(Trial Tr. at 670, Instruction No. 38).

The jury evidently believed Lyons and rejected Christenson's story. Prior to sentencing Christenson filed a motion for new trial based on, among other things, an allegation of new evidence from a police department cadet, Vaughn Van De Boe. Van De Boe was the first officer to talk to Ms. Lyons when she went to the Des Moines police station on February 4, 1998. In an accompanying affidavit Van De Boe said he believed Lyons had told him she had purchased the stun gun. (Direct Appeal App. at 241-45). He also relayed what Lyons had told him and his observations about her demeanor. (<u>Id.</u>) Van De Boe testified at the hearing on the new trial motion. (<u>Id.</u> at 247-55). The trial court denied the motion,

noting Christenson had testified at trial he had purchased the stun gun and had given it to Lyons in Kansas City for her protection on the return trip to Des Moines. (Id. at 267). The court noted Van De Boe's testimony about Lyons' description of the incident was in substantial conformity with her story at trial. It concluded the evidentiary value of Van De Boe's evidence, if any, was primarily as impeachment on a few minor points. (Id. at 267-68).

Christenson raised five issues in his direct appeal : (1) trial court error in allowing a police officer to demonstrate the operation of the stun gun; (2) Christenson's invocation of his Sixth Amendment right to counsel during the interview with police and whether trial counsel was ineffective in failing to challenge the statements which followed; (3) improper judgment and sentence for sexual abuse  when the charges should have merged with the elements for kidnapping; (4) trial court error in denying the motion for new trial based on new evidence; and (5) ineffective assistance of counsel in allowing admission of numerous details concerning the 1996 burglary. (Appellant's Direct Appeal Brief at 1-3). The Iowa Court of Appeals rejected the trial error arguments, except that involving the merger of the kidnapping and sexual abuse offenses, and preserved the ineffectiveness claims for post-conviction relief. Christenson sought further review by the Iowa Supreme Court on the stun gun and new trial issues, the latter as it related to the information from cadet Van De Boe. (Appellant's

13

Application for Further Review at 12-19). As noted previously, Christenson's application for further review was denied on August 3, 2000. (PCR App. at 239).

Christenson filed an application for state postconviction relief on August 1, 2001. (PCR App. at 238). In his application he raised ineffective assistance of counsel in numerous particulars, many of which had not been raised on direct appeal. He complained again about counsel's failure to object to evidence of the 1996 incident with Lyons and subsequent burglary conviction. He raised new ineffectiveness claims, chief among them for the purposes of the present habeas petition counsel's failure to object to jury instruction No. 38 which concerned the consideration of the prior burglary evidence; and failure to discover and present evidence concerning a set of police photographs which did not surface until after the trial. This last issue requires some further factual explanation.

Lyons testified at trial that early on the morning of February 4, before she was attacked by Christenson and at a time when, according to her story, he would have been in the basement, she attempted to call her sister to see if she should pick up her sister's children to take to school with her son Joey, but the telephone was not working. (Trial Tr. at 213). When he attacked her later, Christenson told Lyons "not to bother trying to call for help this time because he had cut the phone lines." (Id. at 305).

14

The "last time" was in September 1996 when Lyons had managed to call the police. (Id. at 201-02, 305). The condition of the telephone lines in Lyons' house was therefore a relevant fact.

At about 12:30 a.m. on February 5, 1998 Des Moines police department identification technicians Sparks and Sprafka arrived to "process" Lyons' house as a crime scene. (Trial Tr. at 387-88). They were met by Lyons' mother. (Id. at 388). Sparks and Sprafka took numerous photographs, most of the living area and most by Sprafka. (Id. at 390). Sprafka's report, attached to Christenson's *pro se* PCR brief as part of Exhibit O, indicated she also took some photographs in the basement. At the PCR hearing Christenson described Sprafka's report and that of Sparks, also a part of Exhibit O, as indicating no telephone lines were found to be cut "inside the house or disconnected." (PCR Tr. at 12). In fact, neither Sparks nor Sprafka said anything about the condition of the telephone lines, indeed, as the Iowa Court of Appeals observed, Sparks' report states they "neglected to photograph or locate the cut telephone lines" which they at the time assumed would have been on the outside of the house. Christenson, 2005 WL 1630101, *5 n.3; (see Christenson *pro se* PCR Brief, Ex. O at 2). The job of investigating the cut telephone lines was assigned to identification technician Tim Briggs who arrived at the house on February 5 at about 8:00 A.M. (Id.; Trial Tr. at 417-18).

Briggs could find nothing wrong with the telephone lines on the exterior of the house. He did find a disconnected (unplugged) telephone line in the basement as well as a cut line which, while it looked like a telephone line, was in fact a utility line of some kind installed by the water company. (Trial Tr. at 306, 419). He photographed both lines, as well as the telephone line after he had reconnected it. (Id. at 419-20; Trial Exs. 6, 8, 9).

Some six or seven months after the trial, in about March 1999, Christenson's sister went to the Des Moines police station and purchased a complete set of photographs pertaining to the prosecution. (PCR Tr. at 161-62). Included in these were Sprafka's basement photographs taken earlier on February 5 which, according to Christenson and his sister, had not been disclosed prior to trial. At his PCR hearing Christenson maintained that a close examination of blow-ups of the Sprafka photographs of the same basement area photographed by Briggs, specifically PCR Exs. E and H, show that the telephone line was not disconnected and the water utility line was not cut at the time Sprafka was in the basement, suggesting they had been tampered with by Lyons prior to Briggs' arrival. (PCR Tr. at 19-20). In its PCR appellate ruling the Iowa Court of Appeals observed the Sprafka photographs "can be

interpreted as showing an intact water line and a connected phone line." Christenson, 2005 WL 1630101, *5.[5]

Christenson alleged his trial counsel, Mr. McCarthy, was ineffective because he failed to independently investigate and discover the existence of the alleged exculpatory Sprafka photographs. The subject was only briefly dealt with in Mr. McCarthy's testimony at the PCR hearing. He said his understanding was that he received a copy of all of the photographs from the County Attorney's office and had showed them to Christenson. (PCR Tr. at 87). There is no indication in the record that Christenson has ever filed a motion for new trial on the basis that the Sprafka photographs are newly discovered evidence. See Iowa R. Crim. P. 2.24(2)(b)(8).

Following evidentiary hearing the PCR court, on June 4, 2004, denied the PCR application, addressing all issues raised including numerous *pro se* allegations of ineffective assistance of counsel and prosecutorial misconduct. (PCR App. at 301). Christenson appealed. On July 13, 2005, the Iowa Court of Appeals affirmed the PCR court's ruling. Christenson, 2005 WL 1630101.

---

[5] The Court has compared the relevant Briggs and Sprafka photographs. They are of the same area of the basement, but at different angles and at different distances from the lines making it difficult to make any definitive conclusions about differences between the two sets as they relate to the condition of the telephone and the water utility lines.

Christenson filed an application for further review by the Iowa
Supreme Court. Presumably the application was denied.[6]

## II.

### DISCUSSION

#### A.   **The Habeas Claims**

The briefing is not completely clear, but viewing it
liberally in Christenson's favor, it appears the parties have
addressed five issues which merit discussion: (1) trial counsel was
ineffective for failing to object to the other "bad acts" evidence,
namely the September 1996 incident between Christenson and Lyons
and subsequent criminal proceedings; (2) trial counsel was
ineffective for failing to object to Instruction No. 38 dealing
with the jury's consideration of the "bad acts" evidence; (3) the
failure to grant a new trial based on cadet Van De Boe's
information about statements made to him was constitutional error;
(4) trial counsel was ineffective for failing to adequately
investigate the existence of the undisclosed Sprafka photographs
and present evidence based on them that the telephone line had not
been disconnected or cut; and (5) the failure of the police and
prosecutor to disclose the Sprafka photographs was a violation of
Christenson's due process rights under the rule laid down in <u>Brady
v. Maryland</u>, 373 U.S. 83 (1963), and its progeny. Respondent

---

[6] No record concerning the denial is provided in the state
records.

18

contends the new trial and <u>Brady</u> issues, items (3) and (5), have been procedurally defaulted, and that all lack substantive merit.[7] It is appropriate to deal first with the exhaustion issues.

## B.   <u>Exhaustion of Remedies</u>

A state prisoner petitioning for a federal writ of habeas corpus must exhaust his or her available remedies in the state courts before coming to federal court. 28 U.S.C. § 2254(b)(1)(A). "The petitioner must present to the federal court the same factual arguments and legal theories that were presented to the state court." <u>Anderson v. Groose</u>, 106 F.3d 242, 245 (8th Cir.), <u>cert. denied</u>, 521 U.S. 1108 (1997); <u>see</u> <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004); <u>Interiano v. Dormire</u>, 471 F.3d 854, 856 (8th Cir. 2006); <u>Perry v. Kemna</u>, 356 F.3d 880, 886 (8th Cir.), <u>cert. denied</u>, 543 U.S. 1022 (2004); <u>Wemark v. State</u>, 322 F.3d 1018, 1020-21 (8th Cir.), <u>cert. denied</u>, 540 U.S. 870 (2003).

Respondent contends Christenson's complaint about the trial court's failure to grant his motion for new trial was not fairly presented to the state courts as a federal constitutional claim. The "fair presentment" requirement means that federal habeas

---

[7] Professing dissatisfaction with his appointed counsel's supplemental brief, Christenson filed a *pro se* motion [50] asking for an extension of time to file a *pro se* brief and that his counsel's brief be withdrawn. The Court denied the request to withdraw the brief filed by counsel, but granted Christenson an extension of time to August 27, 2007 to file a supplemental *pro se* brief [51]. No *pro se* brief has been filed. Accordingly, the Court has been guided by the issues identified in appointed counsel's briefing.

petitioners must "refer[] to 'a specific federal constitutional right, a particular constitutional provision . . . or a state case raising a pertinent federal constitutional issue' in a claim before the states courts.'" Carney v. Fabian, 487 F.3d 1094, 1096 (8th Cir.), cert. denied, 128 S. Ct. 721 (2007)(quoting McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997), quoting in turn Myre v. State of Iowa, 53 F.3d 199, 200 (8th Cir. 1995)); Middleton v. Roper, 455 F.3d 838, 855 (8th Cir. 2006), cert. denied, 549 U.S. 1134 (2007)(quoting Abdullah v. Groose, 75 F.3d 408, 411-12 (8th Cir. 1996)). "The federal legal theory . . . must plainly appear on the face of the petitioner's state-court briefs." Jones v. Jerrison, 20 F.3d 849, 854 (8th Cir. 1994); see Morris v. Norris, 83 F.3d 268, 270 (8th Cir. 1996)("'habeas petitioners must have explicitly cited to the United States Constitution or federal case law in their direct appeal to preserve federal review,'" quoting Luton v. Grandison, 44 F.3d 626, 628 (8th Cir. 1994), cert. denied, 513 U.S. 1195 (1995)).

In his motion for new trial Christenson argued he was entitled to a new trial under Iowa law and because the evidence in Van De Boe's affidavit and testimony were exculpatory. He did not refer to a specific federal constitutional right nor did he cite Brady. (Direct Appeal App. at 243). Nor did the trial court in rejecting the argument. (Id. at 268-69). On direct appeal, appellate counsel cited and relied on then Iowa R. Crim. P.

20

23(2)(b)(8) and an Iowa case setting out what a defendant was required to show under the rule to obtain a new trial, State v. Romeo, 542 N.W.2d 543 (Iowa 1996),[8] to argue the trial court abused its discretion in denying new trial based on Van De Boe's evidence. (Appellant's Direct Appeal Brief at 28-34; Appellant's Application for Further Review at 15-19).[9] Christenson's appellate briefing did not refer to a specific federal constitutional right or plainly advance any federal legal theory. He did not argue, as he had in the trial court, that Van De Boe's evidence should have been disclosed as exculpatory. On appeal the new trial issue was presented solely as an abuse of discretion under Iowa law and it was decided by the Iowa Court of Appeals on that basis. Christenson, 2000 WL 372775, *2-3 (see Appellant's Direct Appeal Brief at 28-32; Appellant's Application for Further Review at 15-19). It follows that Christenson failed to present any federal legal theory in connection with his state court motion for new trial and as a result has procedurally defaulted this issue.

_____

[8] In Romeo, the defendant raised the state's failure to produce certain tape recordings as both a violation of the Iowa Rules of Criminal Procedure and a Brady due process violation. 542 N.W.2d at 550. The Iowa Supreme Court addressed both the state and federal law claims. Id. at 551. Christenson's appellate counsel cited Romeo only for its explanation of the state law standard which must be met to obtain a new trial. Id. at 550 (see Appellant's Direct Appeal Brief at 30).

[9] The new trial issue was raised again in Christenson's post-trial PCR application, but again not as a federal constitutional issue. (See PCR App. at 288-329). The issue was not raised in Christenson's PCR appeal. (PCR Appellant's Brief at 1).

Brady v. Maryland "teaches that due process is violated where the state suppresses evidence that is favorable to the accused and is material to the issue of guilt or punishment." Mark v. Ault, 498 F.3d 775, 783 (8th Cir. 2007)(citing Brady, 373 U.S. at 87). Christenson's counsel recognizes that the nondisclosure of the alleged exculpatory Sprafka photographs, viewed as a Brady issue, has never been presented to any Iowa court. Christenson had available to him a firmly established and regularly followed state procedure to do so, a motion for new trial under Iowa R. Crim. P. 23(2)(b)(8)(now found at Iowa R. Crim. P. 2.24(2)(b)(8)). That rule, which has not been substantively changed since the time of Christenson's conviction, provided:

> The court may grant a new trial . . . [w]hen the defendant has discovered important and material evidence in his or her favor since the verdict, which the defendant could not with reasonable diligence have discovered and produced at the trial. A motion based upon this ground shall be made without unreasonable delay and, in any event, within two years after final judgment, but such motion may be considered thereafter upon a showing of good cause.

Iowa R. Crim. P. 23(2)(b)(8)(1996); see Romeo, 542 N.W.2d at 550-51 (quoting rule and addressing a Brady issue on a new trial motion). The nondisclosure was only raised in the context of a claim that trial counsel was ineffective for failing to investigate and discover the photographs.

22

In his brief Christenson's counsel suggests the ineffective assistance of Christenson's PCR and PCR appellate counsel could serve as cause to excuse the procedural default. A state prisoner who defaults on his federal claims in state court may not obtain federal habeas review of the claims except upon demonstration of cause for the default and actual prejudice from the violation of federal law, or a miscarriage of justice.[10] Coleman v. Thompson, 501 U.S. 722, 750 (1991); see Winfield v. Roper, 460 F.3d 1026, 1034 (8th Cir. 2006), cert. denied, 127 S. Ct. 2256 (2007). In some cases, "constitutionally ineffective assistance of counsel can serve as a cause" to excuse a defaulted claim, Wyldes v. Hundley, 69 F.3d 247, 253 (8th Cir. 1995), cert. denied, 517 U.S. 1172 (1996), but not on the basis of ineffective post-conviction counsel. That is because "[t]here is no federal constitutional right to the effective assistance of post-conviction counsel." Clay v. Bowersox, 367 F.3d 993, 1005 (8th Cir. 2004),

---

[10] The miscarriage of justice exception to the cause and prejudice standard requires a habeas petitioner to "demonstrate a sufficient probability that [the] failure to review his federal claim will result in a fundamental miscarriage of justice." Edwards v. Carpenter, 529 U.S. 446, 452 (2000). In the case of claimed new evidence a fundamental miscarriage of justice can be established by showing "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." House v. Bell, 547 U.S. 518, 536-37 (2006)(quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Christenson does not argue a miscarriage of justice will result from failure to consider a Brady claim and the Sprafka photographs do not have the required extraordinary evidentiary impact when considered in the context of the trial record as a whole.

cert. denied, 544 U.S. 1035 (2005)(citing Coleman, 501 U.S. at 752). As a result, "the law of this Circuit [is] that alleged ineffectiveness of state post-conviction counsel cannot supply the required cause to excuse a procedural default." Brown v. Luebbers, 344 F.3d 770, 775 (8th Cir. 2003), op. vacated in part on other grounds on reh'g en banc, 371 F.3d 458 (2004), cert. denied, 543 U.S. 1189 (2005); see Interiano, 471 F.3d at 857 (ineffectiveness of post-conviction counsel does not excuse procedural default as there is no right to effective assistance of post-conviction counsel, citing Coleman).

If there has been a procedural default, it is not excused by the ineffectiveness of Christenson's post-conviction counsel. Under Iowa R. Crim. P. 2.24(2)(b)(8) it remains open to Christenson to file a second motion for new trial based on the nondisclosure of the Sprafka photographs, though establishing good cause at this late date would appear to be unlikely. To the extent Christenson's habeas petition might be viewed as a mixed petition with an unexhausted Brady claim involving the Sprafka photographs, good cause has not been shown as a matter of federal habeas procedure to stay rather than dismiss the mixed petition. See Rhines v. Weber, 544 U.S. 269, 277-78 (2005).

There is one caveat to this. On August 27, 2007 Christenson filed a pro se "Motion to Stay for Limited Remand and/or Dismissal Absent Prejudice" [54] which sought a stay of

24

habeas proceedings to enable him to file a second state post-conviction application based on Lyons' alleged perjury. According to the motion papers, the perjury had to do in part with Lyons' testimony about the telephone line. The motion was denied on October 2, 2007 [58] for lack of a showing of good cause and other reasons. Christenson may have since pursued some kind of additional post-conviction proceeding in the Iowa District Court. Respondent removed the trial and PCR records from this Court between February and June 2008 at the request of the state trial judge who had presided over Christenson's trial. The Court has not been advised concerning the nature or status of any pending proceedings in state court. On the basis of the present record I will recommend that Christenson's petition be dismissed with leave, however, for Christenson to file a second motion to stay in light of such state court proceedings as may be pending. Any such motion should be filed together with any objections to this report and recommendation.

C. **Standard of Review of State Court Determinations**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) codifies the standard for federal habeas review of state court findings and conclusions.

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

> > (1)    resulted in a decision that was
> >         contrary to, or involved an
> >         unreasonable application of,
> >         clearly established Federal
> >         law, as determined by the
> >         Supreme Court of the United
> >         States; or
>
> > (2)    resulted in a decision that was
> >         based on an unreasonable
> >         determination of the facts in
> >         light of the evidence presented
> >         in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of
> subparagraph (d)(1)], a federal habeas court
> may grant the writ if the state court arrives
> at a conclusion opposite to that reached by
> [the United States Supreme Court] on a
> question of law or if the state court decides
> a case differently than this Court has on a
> set of materially indistinguishable facts.
> Under the "unreasonable application" clause, a
> federal habeas court may grant the writ if the
> state court identifies the correct governing
> legal principle from this Court's decisions
> but unreasonably applies that principle to the
> facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 413 (2000)(O'Connor, J., giving

the opinion of the Court in Part II). See Uttecht v. Brown, ___

U.S. ____, ____, 127 S. Ct. 2218, 2224 (2007)(AEDPA "create[s] an

independent, high standard to be met before the federal court may

issue a writ of habeas corpus to set aside state-court rulings");

Smulls v. Roper, 535 F.3d 853, 858 (8th Cir. 2008), pet. for cert.

filed (Nov. 26, 2008)(No. 08-7465); Evenstad v. Carlson, 470 F.3d

777, 782 (8th Cir. 2006); Page v. Burger, 406 F.3d 489, 493-94 (8th

Cir. 2005). Reasonableness is governed by an objective standard.

<u>Williams</u>, 529 U.S. at 409; <u>Evenstad</u>, 470 F.3d at 782; <u>see</u> <u>Lyons v.</u>
<u>Luebbers</u>, 403 F.3d 585, 592 (8th Cir. 2005); <u>Sera v. Norris</u>, 400
F.3d 538, 542-43 (8th Cir.), <u>cert. denied</u>, 546 U.S. 915 (2005). A
petition for a writ of habeas corpus in federal court implicates
"only a limited and deferential review of [the] underlying state
court decisions." <u>Collier v. Norris</u>, 485 F.3d 415, 421 (8th Cir.
2007). Only when a state court decision is contrary to clearly
established federal law, or beyond reason in the application of
federal law or in the determination of the underlying facts, may a
federal court's judgment on an issue supplant that of a state
court.

On PCR appeal the Iowa Court of Appeals substantively
considered and rejected the exhausted ineffective assistance of
counsel claims. As the "last reasoned decision" of the state courts
the PCR appeal decision is the focus of this Court's review under
the AEDPA standard. <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-04
(1991); <u>Mark</u>, 498 F.3d at 783.

## D.  <u>The Merits of the Ineffective Assistance Claims</u>

Ineffective assistance of counsel claims are analyzed
under the well-established two-prong standard set out in <u>Strickland</u>
<u>v. Washington</u>, 466 U.S. 668, 696 (1984). First, petitioner must
show his attorney's performance was constitutionally deficient,
which necessitates an evaluation of the reasonableness of the
attorney's performance at the time under "prevailing professional

norms." Id. at 688-91; see Marcrum v. Luebbers, 509 F.3d 489, 502
(8th Cir. 2007), cert. denied, ____ S. Ct. ____, 2008 WL 5115746
(12/8/2008); Winfield, 460 F.3d at 1033; Fields v. United States,
201 F.3d 1025, 1027 (8th Cir.), cert. denied, 531 U.S. 885 (2000).
This is a "highly deferential standard" in which it is presumed
"counsel's conduct 'falls within the wide range of reasonable
professional assistance.'" Marcrum, 509 F.3d at 502; Osborne v.
Purkett, 411 F.3d 911, 918 (8th Cir. 2005), cert. denied, 547 U.S.
1022 (2006)(quoting Strickland, 466 U.S. at 689). Second, the court
must be convinced there is a reasonable probability that the
outcome would have been different. Strickland, 466 U.S. at 694;
Marcrum, 509 F.3d at 503; Winfield, 460 F.3d at 1033. The focus
here is on whether the deficient performance "render[ed] the result
of the trial unreliable or the proceeding fundamentally unfair."
Lockhart v. Fretwell, 506 U.S. 364, 369, 372 (1993). In considering
Christenson's ineffective assistance claims the Iowa Court of
Appeals cited to an applied the Strickland standard. Christenson,
2005 WL 1630101, *2.

## 1.    The Other "Bad Acts" Evidence

        Christenson asserts that his trial counsel was
ineffective for failing to object to and eliciting testimony
regarding the September 1996 incident with Lyons, the resulting
charges and burglary conviction. As noted previously, Christenson's
trial counsel made a tactical decision to offer this evidence to

support a defense theory that Lyons had exaggerated or lied before. The Iowa Court of Appeals held first that the evidence would have been admissible as evidence of Christenson's motive and intent and trial counsel was not ineffective for failing to object to admissible evidence. <u>Christenson</u>, 2005 WL 1630101, *3-4.[11] Second, the court concluded counsel's strategy to affirmatively use the other acts evidence in support of Christenson's defense was a "reasonable tactical decision" not to be second-guessed. <u>Id.</u> at *4.

The Iowa Court of Appeals' holding that the September 1996 incident and criminal proceedings would have been admissible was based on Iowa evidentiary law. State law evidentiary rulings are generally not reviewable by a federal habeas court. <u>Bucklew v. Luebbers</u>, 436 F.3d 1010, 1018 (8th Cir.), <u>cert. denied</u>, 549 U.S. 1079 (2006); <u>Osborne</u>, 411 F.3d at 917. "A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process." <u>Garcia v. Mathes</u>, 474 F.3d 1014, 1017 (8th Cir. 2007)(quoting <u>Bucklew</u>, 436 F.3d at 1018, quoting in turn <u>Adail v. Wyrick</u>, 711 F.2d 99, 102 (8th Cir. 1983)). Christenson did not argue in his PCR appeal that the admission of the bad acts evidence and burglary conviction was so prejudicial as to independently

---

[11] Iowa Rule of Evidence 404(b) in effect at the time of Christenson's trial is the same as it is now, and identical to Fed. R. Evid. 404(b) with the exception of the reasonable notice proviso in the federal rule. <u>See</u> Iowa R. Evid. 404(b)(1996); Iowa R. Evid. 5.404(b)(2009).

amount to a denial of due process. (PCR Appellate Brief at 13-19).
The issue was presented solely as one of ineffective assistance of
counsel. <u>Christenson</u>, 2005 WL 1630101, *3-4.

It would have been very difficult to keep the September
1996 incident and Christenson's subsequent prosecution out of the
case. They were part and parcel of the relationship between the
parties and directly connected to the events of February 4, 1998.
To begin with, the earlier incident was relevant to understanding
Christenson's comment to Lyons that she should not "bother trying
to call for help this time." In addition to providing important
background information about the relationship between alleged
victim and perpetrator, the other acts evidence was probative of
Christenson's attraction to Lyons and ultimately his motive and
intent in sexually assaulting her and taking her with him. The Iowa
Court of Appeals' conclusion that counsel was not ineffective for
failing to object to, or eliciting admissible evidence was clearly
reasonable.

That defense counsel made a deliberate tactical decision
not to object to evidence concerning the 1996 incident and criminal
proceedings and to offer the evidence as helpful to the defense is
evident from counsel's statements on the record at the time of
trial and in the PCR hearing. Unless based on insufficient
investigation such "[t]actical decisions . . . are 'virtually
unchallengeable.'" <u>Winfield</u>, 460 F.3d at 1041 (quoting <u>Strickland</u>,

466 U.S. at 690-91); see Forsyth v. Ault, 537 F.3d 887, 892 (8th Cir. 2008), pet. for cert. filed (Nov. 18, 2008)(No. 08-7416). There is no indication counsel's investigation concerning the 1996 incident was deficient. Nor was his tactical decision outside the bounds of reasonable professional assistance. The state's case depended on Lyons' credibility. That Lyons had made the same claims before with little consequence to Christenson beyond a reduced charge and probation arguably suggested her story this time should also not be taken at face value. The Iowa Court of Appeals' conclusion that trial counsel made a reasonable tactical decision to use the prior incident and criminal proceedings to support Christenson's defense was a not an unreasonable application of the Strickland standard.

   2.   Instruction No. 38

        Christenson next contends trial counsel should have objected to Instruction No. 38, a limiting instruction concerning the jury's consideration of the other bad acts evidence just discussed. The jury was instructed:

> You have heard evidence that the defendant allegedly committed other acts with Rebecca Lyons before February 4, 1998. If you decide the defendant committed these other acts, you may consider those acts only to determine whether the defendant has a sexual passion or desire for Rebecca Lyons.

(Trial Tr. at 670, Instruction No. 38). At the PCR hearing, counsel testified he asked for a cautionary instruction concerning the

other acts evidence, but thought he would have objected to the "sexual passion or desire" language in the instruction. (PCR Tr. at 130-32). In fact, trial counsel did not object to any of the instructions given by the court. (Trial Tr. at 748). The reference to determining "sexual passion or desire" as the permissible use of the evidence was awkward at the least, but Christensen's focus in his PCR appeal was on trial counsel's failure to challenge Instruction No. 38 because it did not require "clear proof" of the other alleged wrongful acts in conformity with the relevant Iowa Uniform Criminal Jury Instruction on the subject. (PCR Appellate Brief at 25). The Iowa Court of Appeals held Christenson was not prejudiced by the absence of the "clear proof" language because Christenson's 1996 burglary conviction was in fact established by clear proof. Any error in the giving of the instruction was therefore harmless as a matter of Iowa law. <u>Christensen</u>, 2005 WL 1630101, *6-7.

Here again the underlying issue is primarily one of state law. <u>Robinson v. LaFleur</u>, 225 F.3d 950, 954 (8th Cir. 2000)("Jury instructions involve questions of state law. . . ."). To make out a due process violation under the federal Constitution a habeas petitioner must show "the instructions used constituted a fundamental defect that resulted in a miscarriage of justice." <u>Id.</u> (citing <u>Louisell v. Director of Iowa Dept. of Corrections</u>, 178 F.3d 1019, 1022 (8th Cir. 1999)). The present record is far short of

32

such a showing and indeed, as with the other bad acts evidence, Christenson did not argue before the Iowa Court of Appeals that Instruction No. 38 was so fundamentally defective as to have deprived him of due process. (PCR Appellate Brief at 24-25).

As noted several times now, the prior burglary conviction and the circumstances surrounding it were part of Christenson's "cry wolf" defense. The prosecution saw the same evidence as helpful to its case. (Trial Tr. at 38). As a consequence, the subject was thoroughly explored in evidence. It follows that the "clear proof" language, harmless as a matter of Iowa law because the proof was clear, was harmless also under the <u>Strickland</u> standard for the same reason. There is no reasonable probability the outcome of Christenson's trial would have been any different had trial counsel successfully objected to the failure of Instruction No. 38 to conform with the Iowa Uniform Instruction, and the omission of the "clear proof" language from the instruction did not render the result of the trial unreliable.

### 3.   Failure to Investigate and Discover the Sprafka Photographs

Finally, Christenson asserts his trial counsel was ineffective in failing to investigate the existence of additional photographs beyond those turned over by the prosecutor. The assumption here is that had he done so he would have discovered the allegedly exculpatory Sprafka photographs and appreciated their significance.

33

All the record before the PCR court indicates is that trial counsel understood he had received a copy of all of the photographs from the County Attorney's office and he had showed them to Christenson. (PCR Tr. at 87). The Iowa Court of Appeals held trial counsel was not ineffective in relying on the prosecutor to turn over photographs taken in connection with the investigation. The court believed trial counsel's reliance on the prosecutor was reasonable in view of the prosecutor's ongoing duty under Brady to disclose exculpatory evidence.

In Strickland the Supreme Court specifically addressed counsel's duty to investigate, explaining:

> . . . [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

Strickland, 466 U.S. at 691. The Iowa Court of Appeals reasonably applied Strickland to this issue. This Court does not believe prevailing professional norms of client representation required trial counsel to independently verify that he had been provided with all of the photographs taken at Lyons' residence. In the absence of some reason to believe that the prosecutor has not been forthcoming, it is reasonable for a criminal defense attorney to rely on the completeness of the discovery materials given over by the prosecutor. In any event, the burden was on Christenson as

34

petitioner to overcome the presumption that his trial counsel's representation in this regard was reasonable and on this record he has not done so. <u>Marcrum</u>, 509 F.3d at 502.[12]

### III.

### CONCLUSION

The Court has carefully reviewed the entire trial and PCR hearing transcripts, the record of both proceedings in the Iowa District Court and on appeal to the Iowa Supreme Court, the briefs of the parties and other relevant matters appearing of record. Having done so, the Court concludes that Petitioner Cord Christenson has not shown that the Iowa courts' adverse determinations on any ground for issuance of a writ of habeas corpus properly presented to this Court were contrary to, or involved an unreasonable application, of clearly-established federal law, or an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Nor has Petitioner otherwise shown that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a).

---

[12] Christenson's appointed habeas counsel concedes that the Iowa Court of Appeals' holding on the ineffectiveness claim pertaining to the Sprafka photographs "seems sound." (Petitioner's 7/16/07 Brief at 9).

## IV.

### RECOMMENDATION AND ORDER

IT IS RESPECTFULLY RECOMMENDED, pursuant to 28 U.S.C. § 636(b)(1)(B), that Petitioner's petition for a writ of habeas corpus be **DISMISSED**, though Petitioner may together with any objections to this Report and Recommendation file a second motion to stay in light of such relevant state court proceedings as may be pending. If such a motion is filed it should be determined in connection with the recommendation for dismissal.

IT IS ORDERED that the parties have until **January 26, 2009** to file written objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1). Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Wade for Robinson v. Callahan, 976 F. Supp. 1269, 1276 (E.D. Mo. 1997). Any objections filed must identify the specific portions of the Report and Recommendation and set forth the basis for such objections. See Fed. R. Civ. P. 72; Thompson, 897 F.2d at 357. Failure to timely file objections may constitute a waiver of a party's right to appeal questions of fact. Thomas v. Arn, 474 U.S. 140, 155 (1985); Griffini v. Mitchell, 31 F.3d 690, 692 (8th Cir. 1994); Halpin v. Shalala, 999 F.2d 342, 345 & n.1, 346 (8th Cir. 1993); Thompson, 897 F.2d at 357.

Dated this 24th day of December, 2008.

ROSS A. WALTERS
UNITED STATES MAGISTRATE JUDGE

36